UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL ANGEL CANO,<br><br>Defendant. | Case No.:  16-cr-01770-BTM<br><br>**ORDER DENYING MOTION TO SUPPRESS AND MOTION FOR RETURN OF PROPERTY** |

Presently before the Court are Defendant's motion to suppress and motion for return of property.  The Court held an evidentiary hearing on these matters on October 25, 26 and 31, 2016.  For the reasons discussed below, Defendant's motions are **DENIED**.

## I. FACTUAL BACKGROUND

On July 25, 2016 at approximately 6:30 a.m., Defendant, Miguel Angel Cano, applied for entry to the United States at the San Ysidro Port of Entry ("POE").  A Customs and Border Protection ("CBP") officer conducted a primary inspection of Defendant and his pick-up truck.  The CBP officer subsequently referred Defendant to secondary inspection.

During secondary inspection, a dog alerted to the spare tire located

1  underneath the bed of the truck.  Secondary officers handcuffed Defendant
2  shortly thereafter.  Defendant was taken to the security office where he was
3  handcuffed to a bench.  CBP officers cut the spare tire open and found
4  approximately 16.52 kilograms of cocaine.  Defendant was subsequently placed
5  under arrest.

6  After the cocaine was found, CBP officers called the Homeland Security
7  Investigations ("HSI") office, which dispatched Special Agents ("SA") Petonak
8  and Medrano to investigate.  Upon arriving at the POE, SA Petonak spoke to the
9  seizing CBP officers, inspected Defendant's vehicle and property, and reviewed
10 Defendant's crossing records.  SA Petonak also did a cursory inspection of
11 Defendant's cell phone to look for relevant text messages and recent calls.  SA
12 Medrano conducted a "logical download" of Defendant's cell phone using
13 Cellebrite technology.  A "logical download" has the capability of downloading
14 text messages, contacts, call logs, media, and application data, though not
15 messages contained within the applications themselves.  He also took notes of
16 incoming and outgoing calls.  He related his findings to SA Petonak after his
17 interview of Defendant.

18 At around 9:50 a.m., SA Petonak began his interview of Defendant.  SA
19 Petonak advised Defendant of his *Miranda* rights and obtained a written waiver of
20 them.  Defendant agreed to speak to SA Petonak without an attorney present.
21 During the interview SA Petonak asked Defendant about his recent crossing
22 history and the reason for his recent move to Mexico.  Defendant's post-*Miranda*
23 interview ended at about 10:20 a.m.  Defendant was transported to the
24 Metropolitan Correctional Center ("MCC") in San Diego and booked during the
25 5:30 p.m. booking window.  The following day, on July 26, 2016, Defendant
26 made his initial appearance before Judge Stormes.

27 On August 5, 2016, Judge Adler granted the government a search warrant
28 for Defendant's cell phone and ordered that it be executed by August 19, 2016.

## II. DISCUSSION

Defendant moves to suppress all evidence derived from the search of his cell phone at the POE, contending that his Fourth Amendment rights were violated because the agents searched his cell phone without a warrant. He also petitions the Court for the return of his cell phone under Federal Rule of Criminal Procedure 41(g). Lastly, Defendant argues that his statements should be suppressed as an appropriate remedy for a Federal Rule of Criminal Procedure Rule 5(a) violation. The Court addresses each argument below.

### A.  Search of Defendant's Cell Phone at the POE

Defendant argues that the agents' search of his cell phone on July 25, 2016 does not fall into any recognized exceptions to the Fourth Amendment's warrant requirement. Defendant relies on *Riley v. California*, __U.S.__, 134 S. Ct. 2473 (2014), to argue that the search incident to arrest doctrine does not apply. He further argues that the search does not fall within the border search exception to the Fourth Amendment because its purpose was to further the agents' investigation, rather than to prevent the entry of unwanted persons or contraband. The Government submits that *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc), supports the "logical search" of Defendant's cell phone—regardless of whether it is deemed a cursory or forensic search.

#### *1. Search Incident to Arrest Exception*

In *Riley*, the Supreme Court held that police officers must get a warrant before searching a cell phone seized incident to arrest. 134 S. Ct. at 2495. Defendant argues that because he was already arrested when the agents arrived at the POE, the warrantless search of his phone was performed as a search

//
//
//

1 incident to arrest and was impermissible under *Riley.*

2 However, the search incident to arrest doctrine is one of numerous
3 exceptions to the Fourth Amendment's warrant requirement.  In fact, even the
4 Supreme Court in *Riley* recognized that although "the search incident to arrest
5 exception does not apply to cell phones, other case-specific exceptions may still
6 justify a warrantless search of a particular phone." *Riley*, 134 S. Ct. at 2494.
7 Though the Supreme Court did not specifically address the border search
8 exception, *Riley* does not preclude the application of such doctrine.

### 2. Border Search Exception

Border searches have long been recognized as a narrow exception to the
Fourth Amendment's warrant requirement.  *See Cotterman*, 709 F.3d at 956.
Courts have repeatedly held that searches performed at the border, pursuant to
the longstanding right of the sovereign to protect itself by stopping and examining
persons and property crossing into the United States, are "reasonable simply by
virtue of the fact that they occur at the border." *Cotterman*, 709 F.3d at 960.
However, border searches are not without limits.  *Id.*  "Even at the border,
individual privacy rights are not abandoned but balanced against the sovereign's
interests." *Id.*

#### i. Purpose of the Search

Defendant submits that the justification for a border search exception,
preventing the entry of unwanted persons or contraband, is inapplicable here.
Defendant argues that because he was already in custody, and the drugs and his
phone were seized before the agents arrived at the POE, the agents' search of
his phone was "investigatory" in nature.  That is, they performed the search to
gather evidence in an ongoing criminal investigation.  Defendant thus attempts to
draw a line between searches that are performed for the purpose of preventing
the entry of unwanted persons or things, like those at issue in *United States v.
Arnold*, 533 F.3d 1003, 1009 (9th Cir. 2008) and *Cotterman*, and "investigatory"

searches.

Though not framed as an inquiry into the actual motivations of the agents, Defendant's argument is effectively seeking that the Court give weight to the agents' subjective intent and motivations behind their search.  However, courts have repeatedly held that the Fourth Amendment's reasonableness analysis is "predominately an objective inquiry." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011).  In upholding a "pre-text stop," the Supreme Court in *Whren v. United States*, 517 U.S. 806, 813 (1996), reaffirmed the principle that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." There, police officers discovered drugs after allegedly conducting a pretextual traffic stop. *Id.* at 808–809.  The Supreme Court rejected the argument that "ulterior motives can invalidate police conduct justified on the basis of probable cause" and ultimately upheld the temporary detention of the defendant upon probable cause that he had violated a traffic law. *Id.* at 812.  It stated: "[n]ot only have we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Id.*

The Supreme Court has only recognized two limited exceptions to this general rule: 1) special-needs search cases[1]; and 2) administrative-search cases[2]. *See Al-Kidd*, 563 U.S. at 736; *see also City of Indianapolis v. Edmond*,

---

[1] The Supreme Court has upheld "suspicionless searches where the program was designed to serve 'special needs,' beyond the normal need for law enforcement." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). *See, e.g., Veronica Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995) (finding that "special needs" exist in the public school context and upholding random drug testing of student-athletes); *Nat'l Treasury Emps. Union v. Von Raab* 489 U.S. 656 (1989) (upholding the testing of employees directly involved in drug interdiction or required to carry firearms); *Skinner v. Ry. Labor Execs.' Assn.*, 489 U.S. 602 (1989) (upholding the toxicologist testing of railroad employees involved in train accidents or found to be in violation of particular safety regulations).

[2] *See, e.g., New York v. Burger,* 482 U.S. 691 (1987) (holding that the State's authorization of warrantless inspections of junkyards, concededly for the purpose of uncovering criminality, was not unconstitutional); *Camara v. Mun. Court of City and Cnty. of San Francisco*, 387 U.S. 523 (holding that administrative searches by municipal health and safety inspectors when authorized and conducted without warrant procedure, lack traditional

531 U.S. 32, 37 (2000) (holding that "Fourth Amendment intrusions undertaken pursuant to a general scheme without individualized suspicion may be invalid if the scheme as a whole "pursue[s] primarily general crime control purposes."). Apart from those cases, the Supreme Court has "almost uniformly rejected invitations to probe subjective intent." *Al-Kidd*, 563 U.S. at 737.  As the Supreme Court phrased the inquiry, when determining whether a search or seizure is reasonable under the Fourth Amendment," we ask whether "the circumstances, viewed objectively, justify the challenged action." *Id.* at 736.  If so, then that action was reasonable "'whatever the subjective intent' motivating the relevant officials." *Id.* (quoting *Whren*, 517 U.S. at 814).

As such, border search cases do not turn on the purpose or motivation behind the search.  Rather, they focus on the degree of intrusiveness in light of the sovereign's interest at the border.  In *United States v. Hsi Heui TSAI*, 282 F.3d 690, 694 (9th Cir. 2002), the Ninth Circuit specifically addressed whether the alleged investigative purpose of a search conducted at the border took it outside the scope of a "routine" border search.  There, the defendant had flown into Hawaii from Guam.  *Id.* at 694.  The defendant argued that because the INS inspector knew that he was suspected of criminal activity in Guam, the search of his briefcase was conducted for purposes of criminal investigation, not as a "routine" border search.  *Id.*  The Ninth Circuit reinforced that "[t]he 'critical factor' in determining whether a border search is "routine" is the degree of intrusiveness it poses." *Id.*  While acknowledging that there are some cases like *Edmond*, in which subjective motivation is not wholly irrelevant, the Ninth Circuit held this case was not one of them.  *Id.* at 695.  It therefore held that the search of the defendant's briefcase was reasonable as a routine border search notwithstanding the INS inspector's investigative purpose.  *Id.* at 696.

---

safeguards which Fourth Amendment guarantees to individuals).

A review of Ninth Circuit cases specifically addressing digital searches at the border also reveals that the subjective motivation behind a search does not "serve to impose a warrant requirement that ordinarily does not exist at the border." *Id.* at 694. In *Arnold*, the Ninth Circuit held that warrantless searches of laptops or other personal electronic storage devices at the border did not require reasonable suspicion. *Id.* at 533 F.3d 1003. There, the defendant was stopped by customs officials at the Los Angeles International Airport as he returned from a trip to the Philippines. *Id.* at 1005. He was asked by the customs officers to boot his laptop up and they proceeded to look through two folders of images on his desktop. *Id.* The folders contained two nude photos, which led the officers to further examine the computer. *Id.* The computer search revealed child pornography. *Id.* In determining whether this search required reasonable suspicion, the Ninth Circuit turned to the well-grounded border search doctrine. *Id.* at 1007. The court held that the search of the laptop, like that of a gas tank, did not "implicate the same 'dignity and privacy' concerns as 'highly intrusive searches of the person.'" *Id.* at 1008 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004)). No reasonable suspicion was therefore required.

The Ninth Circuit in *Cotterman* narrowed the holding in *Arnold* and outlined a two-tiered approach for determining what level of suspicion is required for digital border searches. 709 F.3d at 961. There, agents seized the defendant's laptop at the U.S.-Mexico border in response to an alert of a child molestation conviction. *Id.* at 957. The agents conducted an initial search of his laptop which revealed no incriminating material. *Id.* at 957–58. Only after the defendant's laptop was shipped away and subjected to a comprehensive forensic examination were images of child pornography discovered. *Id.* at 958. The Court held that, under *Arnold*, the initial cursory search of the defendant's electronic devices at the border was reasonable even without particularized suspicion. *Id.* at 960. However, given the intrusive nature of a forensic

examination of the electronic device, to justify the search as reasonable, it had to be supported by reasonable suspicion. *Id.* at 968.

The Ninth Circuit's holding in *Cotterman* did not depend on whether the search was "investigatory" in nature. It instead rested on the "comprehensive and intrusive nature of a forensic examination." *Id.* at 962. Defendant cites no authority to support his proposition that if the search is "investigatory," it ceases being a border search. In fact, several courts in this District have refused to decide cases involving searches at the border on such a distinction. *See United States v. Ramos*, No. 16-cr-467 JM, 2016 WL 3552140, at *13 (S.D. Cal. June 3, 2016) (finding that an agent's manual search of the defendant's phone approximately an hour and a half after his arrest was reasonable under the border search exception); *see also United States v. Caballero*, No. 15-cr-2738, 2016 WL 1546731-BEN, at *4 (S.D. Cal. Apr. 14, 2016) (applying *Cotterman* and finding that the warrantless, post-arrest cursory search of the defendant's cell phone was permissible under the border search doctrine); *see also United States v. Hernandez*, No. 15-cr-2613, 2016 WL 471943-GPC, at *3 (S.D. Cal. Feb. 8, 2016) (refusing to make a distinction between "investigatory" border searches and "protecting the United States' sovereign integrity by excluding unwanted persons or things.").

It is also worth noting that here, there is evidence that the agents were motivated, at least in part, by the desire to prevent the entry of additional contraband into the country. At the hearing, both SA Medrano and SA Petonak testified that they searched Defendant's phone, in part to prepare for Defendant's interview, but also to look for communications that might lead to co-conspirators and messages from co-conspirators that could reveal other drug loads being smuggled. Thus, even if the Court were to take into account the subjective intentions of the agents, the search is nevertheless a border search. *See, e.g.*, *Ramos*, 2016 WL 3552140, at *5 (noting that though the border search may have

1  not uncovered additional information regarding the defendant's wrongdoing, it
2  may have uncovered more information about more contraband entering into the
3  country at that time or the location where the defendant was to drop off or
4  transfer the drugs).

### ii. Reasonable Under *Arnold* and *Cotterman*

Therefore, the issue here is whether the searches of Defendant's cell phone at the border were reasonable under *Cotterman*. The Court holds that they were. SA Petonak's warrantless search of Defendant's cell phone is clearly permissible under *Arnold*. Like the manual search in *Arnold*, Agent Petonak here performed a cursory search of Defendant's phone.

SA Medrano's "logical" search of the phone is also lawful under the border search doctrine, but merits further discussion. In addition to performing a manual search of the phone, SA Medrano also used Cellebrite technology to conduct a "logical download" of the cell phone. The Government contends that this does not constitute a forensic search, and as such, no reasonable suspicion was required. In the alternative, the Government argues that even if the Court were to characterize the search as "forensic," *Cotterman* nevertheless supports it because the agents had reasonable suspicion and even probable cause.

Here, the Court need not decide whether the use of Cellebrite technology transforms it from a mere "cursory search" to a "forensic search," as the "logical download" was supported by at least reasonable suspicion. SA Medrano searched through Defendant's phone after CBP officers found approximately 16.52 kilograms of cocaine in the spare tire of his truck. This not only amounts to reasonable suspicion, but gives rise to probable cause. The agents had reason to believe that Defendant used his cell phone as an instrumentality of the crime. Accordingly, SA Medrano's search of Defendant's phone using Cellebrite technology was reasonable under the border search exception.

//

### *3. Good Faith Exception*

Even if the search of Defendant's phone does not fall within the border search exception, the evidence is nevertheless admissible because the good faith exception to the exclusionary rule applies here.

Not every Fourth Amendment violation demands applying the exclusionary rule. *Herring v. United States*, 555 U.S. 135, 140 (2009). "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Schesso*, 730 F.3d 1040, 1050–51 (9th Cir.2013) (quoting *Herring*, 555 U.S. at 143).

Here, there is both Supreme Court and Ninth Circuit law approving the well-grounded border search doctrine. Specifically, *Cotterman* remains good law and permits agents to search electronic devices at the border without a warrant. At the hearing, Defendant argued that the good faith exception does not apply because *Riley*'s warrant requirement is established law. However, as already discussed above, *Riley* did not address the border search exception, but instead based its holding on the search incident to arrest exception. The Court is aware of no case, post-*Riley*, that applies its holding to searches of cell phones conducted at the border. In fact, as already noted, there are several courts in this District that have upheld a warrantless, post-arrest, search of a defendant's cell phone pursuant to the border search doctrine. The Court therefore finds that the agents in this case searched Defendant's cell phone in reliance on the border search doctrine. The good faith exception to the exclusionary rule thus applies.

Defendant's motion to suppress evidence derived from the search of his cell phone at the POE is therefore **DENIED.**

**B.    Return of Property Under Rule 41(g)**

Defendant moves for the return of his cell phone pursuant to Federal Rule

of Criminal Procedure 41(g), which "provides a mechanism by which a person may seek to recover property seized by federal agents." *Ordonez v. United States*, 680 F.3d 1135, 1137 (9th Cir. 2012). The text of the rule states:

> A person aggrieved by an unlawful search and seizure of property or by deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). Unless "the property in question is no longer needed for evidentiary purpose, either because trial is complete, the defendant has pleaded guilty, or. . . the government has abandoned its investigation," the movant bears the burden of demonstrating that he or she is entitled to lawful possession of the property. *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, n. 2 (9th Cir. 2010).

Here, as discussed above, Defendant's cell phone was not subject to an unlawful search and seizure. Defendant argues that because the government has already seized the data from his phone, it no longer needs the physical phone. Nevertheless, the cell phone serves an evidentiary purpose as the case remains open and it was seized as an alleged instrumentality of the charged crime. As such, Defendant's motion for return of his cell phone is **DENIED WITHOUT PREJUDICE**.

**C.    Suppression of Statements Under Rule 5**

Defendant argues that his statements must be suppressed because the Government delayed his initial appearance before a Magistrate Judge in violation of Federal Rule of Criminal Procedure 5.

Rule 5 of the Federal Rules of Criminal Procedure states that, "[a] person

making an arrest within the United States must take the defendant *without unnecessary* delay before a magistrate . . .". Fed. R. Crim. P. 5(a)(1)(A) (emphasis added). Unnecessary delay "must be determined in light of all the facts and circumstances of the case." Fed. R. Crim. P. 5 advisory committee's notes. The *McNabb-Mallory* rule "generally render[s] inadmissible confessions made during periods of detention that violate the prompt presentment requirement of [Rule] 5(a)." *Corley v. United States*, 556 U.S. 303, 303 (2009). In response to the application of *McNabb-Mallory* in some federal courts, Congress enacted 18 U.S.C. § 3501(c). *See Corley*, 556 U.S. at 322. Section 3501(c), provides that:

> In any criminal prosecution by the United States . . . , a confession made . . . by a defendant therein, while such person was under arrest . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily . . . and if such confession was made . . . within six hours immediately following his arrest . . . [this six-hour time limit] shall not apply in any case in which the delay in bringing such person before magistrate judge . . . is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

§ 3501(c). In interpreting section 3501, the Supreme Court in *Corley* held that it modified *McNabb-Mallory*, without supplanting it. *Id.* at 322. The Supreme Court established a two-part test for applying the *McNabb-Mallory* rule in light of the six-hour safe harbor period in section 3501(c). *Id.* at 322; *see also United States v. Pimental*, 755 F.3d 1095, 1101 (9th Cir. 2014) (applying the two-part test established in *Corley*). First, a district court must determine "whether the defendant confessed within six hours of arrest (unless a longer delay was 'reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate judge]')." *Id.* If the confession falls

within the six-hour period, "it is admissible. . . so long as it was 'made voluntarily and . . . the weight to be given it is left to the jury.'" *Id.* If the defendant, however, made the confession before presentment and beyond six hours, a court must find "whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed." *Id.*

Defendant cites to *Pimental* to argue that his presentment on the day following his arrest violated Rule 5 and, as such, the statements he made before presentment should be suppressed. The defendant in *Pimental* was arrested on a Friday morning at the San Ysidro POE, but was not presented before a Magistrate Judge until the following Tuesday. 755 F.3d at 1098–99. There, the defendant made the incriminating statements more than six hours after his arrest. *Id.* at 1101. Because the section 3501(c) safe harbor did not apply, the Ninth Circuit's analysis turned on whether the delay was "unreasonable or unnecessary under the *McNabb-Mallory* cases." *Id.* The Ninth Circuit ultimately held that the delay was unnecessary and reversed the district court's denial of the defendant's motion to suppress. *Id.* at 1104.

Defendant argues that his case "is on all fours with" *Pimental*, yet he ignores one crucial distinguishing fact. Here, Defendant made the statements at approximately 9:50 a.m.[3]—less than six hours after being arrested. Under Ninth Circuit law, because the statements were made within the six-hour safe harbor, they are admissible so long as they were made voluntarily. As determined by the Court during the hearing on this motion, Defendant knowingly, intelligently and voluntarily waived his rights and proceeded to make the statements at issue.

Moreover, the Court does not find that there have been a series of Rule 5 violations for the purpose of obtaining confessions so as to warrant suppression

---

[3] The parties dispute the time of Defendant's arrest. Defendant argues that he was arrested at 6:45 a.m. The Government contends that he was arrested at 8:00 a.m. The Court need not determine the time of arrest because it is undisputed that the statements were made within six-hours of being arrested at either time.

of Defendant's statements in this case.

Consequently, Defendant's motion to suppress his statements is **DENIED**.

### III. CONCLUSION

For these reasons, Defendant's motion to suppress and motion for return of property are **DENIED.**

**IT IS SO ORDERED.**

Dated: November 23, 2016

_____
Barry Ted Moskowitz, Chief Judge
United States District Court